# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation; and DOES 1 through 50, inclusive
**YOU ARE BEING SUED BY PLAINTIFF:**

**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

EDITH GONZALEZ; SUEY LEN WONG; LEONARD WONG, JR.; MARCO MARTIN; and NORMA T. CORTES

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/12/2026 8:20 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Cervantes, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):

CASE NUMBER:
(Número del Caso):
**26STCV13524**

Los Angeles County Superior Court, 111 N. Hill St., Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Nolan F. King, Law Office of Nolan F. King, 100 N. Euclid Ave., 2nd Floor  Upland, CA 91786 (909) 931-0010

David W. Slayton, Executive Officer/Clerk of Court

DATE: 05/12/2026
(Fecha)

Clerk, by C. Cervantes
(Secretario)

, Deputy
(Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons. (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/27/2026 7:21 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By P. Rodriguez, Deputy Clerk

NOLAN F. KING, ESQ. (SBN 93358)
**LAW OFFICES OF NOLAN F. KING**
100 N. Euclid Ave., 2nd Floor
Upland, California 91786
Telephone: (909) 931-0010
Facsimile: (909) 931-0043
Email: nfkinglaw@gmail.com

Attorney for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| EDITH GONZALEZ; SUEY LEN WONG; LEONARD WONG, JR.; MARCO MARTIN; and NORMA T. CORTES, Plaintiffs, <br><br> VS. <br><br> STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation; and DOES 1 through 50, inclusive, Defendants. | Case No.: **26STCV13524** <br><br> **COMPLAINT FOR:** <br> **(1) BREACH OF CONTRACT;** <br> **(2) TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (INSURANCE BAD FAITH);** <br> **(3) DECLARATORY RELIEF (CODE CIV. PROC., § 1060);** <br> **(4) UNFAIR COMPETITION (BUS. & PROF. CODE § 17200 ET SEQ.).** <br><br> [Related to Los Angeles Superior Court Case No. 26STCV06249 — Gonzalez, et al. v. Howard & Sons, Inc., et al.] <br> [DEMAND FOR JURY TRIAL] |

## PRELIMINARY STATEMENT

This is an insurance bad-faith action against State Farm General Insurance Company ("State Farm") arising from State Farm's refusal, for more than five months, to accept or deny, adjust, or pay a first-party property insurance claim after a catastrophic water-intrusion loss at the Oaks III condominiums, 1725 Neil Armstrong Street, Montebello, California 90640. On or about November 14, 2025, the Oaks III Homeowners Association's ("HOA") roofing contractor left sections of the common-area roof open and exposed before a forecasted rainstorm. When the rains arrived, massive quantities of rainwater entered Plaintiffs' condominium units, causing catastrophic structural and personal-property damage and rendering the units uninhabitable. Plaintiffs have been displaced from their homes since November 14, 2025.

Case No.: _____    -1-
COMPLAINT

State Farm issued a Residential Community Association Policy to the HOA covering the Subject Property, under which Plaintiffs are insureds, additional insureds, and/or intended third-party beneficiaries. Notwithstanding prompt notice of loss, Plaintiffs' ongoing displacement, and a full replacement-cost estimate in State Farm's hands, State Farm has: (i) not accepted or denied the claim in writing, in whole or in part; (ii) not funded the repair contractor that State Farm itself agreed to engage; (iii) not paid any Additional Living Expense benefits to the displaced Plaintiffs despite their obvious and continuing displacement and despite the Policy's twelve-month Actual-Loss-Sustained coverage; (iv) stopped communicating with Plaintiffs and the HOA through its assigned adjuster; and (v) ignored written notice of bad-faith conduct served on April 3, 2026 upon State Farm's Chief Executive Officer, Herbert Wensley, together with a written demand to cure. State Farm's conduct has left five families — including elder Plaintiffs — to carry the financial and emotional burden of uncompensated displacement while State Farm sits on benefits it owes. This action seeks all contractual and tort damages, *Brandt* fees, punitive damages, declaratory relief, restitution, and a permanent injunction compelling State Farm to adjust and pay the claim in accordance with law.

## PARTIES

1. Plaintiff **EDITH GONZALEZ** is, and at all relevant times was, an individual residing in the County of Los Angeles, State of California, and is the record owner of the condominium unit located at 1725 Neil Armstrong Street, Unit 113, Montebello, California 90640.

2. Plaintiff **SUEY LEN WONG** is, and at all relevant times was, an individual residing in the County of Los Angeles, State of California, and is the record owner of the condominium unit located at 1725 Neil Armstrong Street, Unit 114, Montebello, California 90640.

3. Plaintiff **LEONARD WONG, JR.** is, and at all relevant times was, an individual residing in the County of Los Angeles, State of California, and is a record owner of the condominium unit located at 1725 Neil Armstrong Street, Unit 111, Montebello, California 90640.

Case No.: _____                                    -2-
COMPLAINT

4. Plaintiff **MARCO MARTIN** is, and at all relevant times was, an individual residing in the County of Los Angeles, State of California, and is the record owner of the condominium unit located at 1725 Neil Armstrong Street, Unit 112, Montebello, California 90640.

5. Plaintiff **NORMA T. CORTES** is, and at all relevant times was, an individual residing in the County of Los Angeles, State of California, and is the record owner of a condominium unit located at 1725 Neil Armstrong Street, Montebello, California 90640. Plaintiffs collectively are referred to herein as "Plaintiffs."

6. Some of the Plaintiffs are sixty-five (65) years of age or older and, as such, are "elders" within the meaning of Welfare and Institutions Code section 15610.27, as further alleged in the preservation allegation below.

7. Defendant **STATE FARM GENERAL INSURANCE COMPANY** ("State Farm") is, and at all relevant times was, a corporation organized under the laws of the State of Illinois, authorized to transact the business of insurance in the State of California, and engaged in such business throughout the County of Los Angeles. State Farm issued to the HOA the Residential Community Association Policy identified herein, under which Plaintiffs are insureds, additional insureds, and/or intended third-party beneficiaries. The above-referenced entity is alleged on information and belief to be the correct issuing affiliate for the Policy; to the extent any different State Farm affiliate is the correct issuing entity, such entity is named herein in the alternative through the Doe designations below.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants **DOES 1 through 50**, inclusive, are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the Doe Defendants is in some manner legally responsible for the acts and omissions alleged herein, including without limitation as officers, directors, managing agents, claims personnel, agents, brokers, adjusters, third-party administrators, reinsurers, affiliates, or successors-in-interest of State Farm. Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of the Doe Defendants when ascertained. (Code Civ. Proc., §§ 474, 583.210.)

Case No.:                                    -3-
                                        COMPLAINT

9. Plaintiffs are informed and believe, and on that basis allege, that at all times relevant hereto, each Defendant was the agent, employee, servant, representative, co-conspirator, principal, joint venturer, alter ego, successor-in-interest, partner, or associate of each of the remaining Defendants and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, service, conspiracy, principal-agent relationship, joint venture, alter ego, partnership, or association, and with the authorization, consent, knowledge, permission, approval, and ratification of each of the remaining Defendants.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction pursuant to the California Constitution, article VI, section 10. The amount in controversy exceeds the unlimited-civil jurisdictional threshold of $35,000. (Code Civ. Proc., §§ 85, 86, 88.)

11. Venue is proper in the County of Los Angeles pursuant to Code of Civil Procedure sections 395 and 395.5. The insured property and the location of the loss are in Montebello, County of Los Angeles. The Policy insures a California risk situated in Los Angeles County. State Farm's obligations under the Policy — including the obligation to indemnify for direct physical loss to the Subject Property, the obligation to pay Additional Living Expense benefits to the displaced insureds, and the obligation to fund repairs to the insured premises — are to be performed, and the obligations arose, in Los Angeles County. State Farm's breach of contract and tortious conduct, including the wrongful withholding of Policy benefits, has occurred and continues to occur in Los Angeles County.

## RELATED CASE

12. Plaintiffs are also parties plaintiff in a related action pending in this Court: *Edith Gonzalez, et al. v. Howard & Sons, Inc., et al.*, Los Angeles Superior Court Case No. 26STCV06249, filed on or about February 27, 2026, asserting causes of action arising out of the same loss against the HOA, its managing agent Genie Real Estate & Property Management, and the roofing contractor Howard & Sons, Inc. Plaintiffs will file a Notice of Related Case concurrently herewith pursuant to California Rules of Court, rule 3.300. This action seeks

Case No.:

-4-

COMPLAINT

distinct and additional relief against State Farm for breach of a separate insurance contract and for tortious bad-faith claims handling.

## GENERAL ALLEGATIONS

### A. The Subject Property and the Policy

13. The Subject Property is a common interest development within the meaning of the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.), known as the Oaks III Community. The development consists of multiple residential condominium units served by common-area components that include, without limitation, the roof or roofs covering Plaintiffs' units. Plaintiffs are members of the HOA by virtue of their record ownership of condominium units at the Subject Property.

14. On information and belief, State Farm issued to the HOA, as named insured, Residential Community Association Policy No. 92-KA-B260-6, including endorsement CMP-4696 (the "Policy"), with an effective policy period of June 2, 2025 through June 2, 2026. The Policy insures the common areas, buildings, and structures of the Subject Property, including but not limited to the roof or roofs covering Plaintiffs' units, and provides coverage for direct physical loss or damage caused by a Covered Cause of Loss on an all-risks (open-perils) basis, subject only to the exclusions stated in the Policy. The Policy also provides coverage for Loss of Income and Extra Expense, including Additional Living Expense, on an Actual-Loss-Sustained basis for a period of up to twelve (12) months from the date of direct physical loss, or until the insured property can be repaired, replaced, or made habitable, whichever first occurs.

15. The HOA paid all premiums on the Policy when due. All such premiums are funded, in whole or in part, by assessments levied on and paid by the unit owners at the Subject Property, including Plaintiffs. All conditions precedent to coverage were satisfied, waived, excused, or rendered impossible by the conduct of State Farm, as further alleged below. (Code Civ. Proc., § 457.)

### B. Plaintiffs' Status as Insureds / Additional Insureds / Third-Party Beneficiaries

16. Plaintiffs are insureds under the Policy on each and all of the following independent grounds:

Case No.:
COMPLAINT

-5-

a. **Direct insured / additional insured.** On information and belief, the Policy's "Who Is An Insured" and associated definitional provisions, as modified by endorsement CMP-4696, identify as insureds the HOA *and* the individual unit owners for their ownership, use, occupancy, and other insurable interests in the Subject Property, including but not limited to the common areas insured under the Policy. Plaintiffs are therefore direct insureds or additional insureds under the Policy, entitled in their own right to the full benefits of the Policy, and entitled to the full protection of the implied covenant of good faith and fair dealing that the Policy imposes upon State Farm. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574; *Sarchett v. Blue Shield of Cal.* (1987) 43 Cal.3d 1.)

b. **Third-party beneficiaries under Civil Code § 1559.** In the alternative, Plaintiffs are intended third-party beneficiaries of the Policy within the meaning of Civil Code section 1559. The Policy was made expressly for the benefit of the unit owners at the Subject Property, whose assessments fund the premiums and whose condominium interests and habitability depend upon the Policy's performance. A third-party beneficiary claim under section 1559 requires only that the benefit to the plaintiff be more than incidental; "expressly for the benefit of" has been construed to mean the opposite of "incidentally." (*Gilbert Financial Corp. v. Steelform Contracting Co.* (1978) 82 Cal.App.3d 65, 70.) Plaintiffs readily qualify under the modern three-part test for third-party-beneficiary standing: (i) the benefit to Plaintiffs is a motivating purpose of the Policy; (ii) permitting Plaintiffs to enforce the Policy is consistent with the objectives of the Policy and the reasonable expectations of the contracting parties; and (iii) the Policy text, taken in its commercial and regulatory context, makes clear that Plaintiffs were intended beneficiaries. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)

c. **Creditor-beneficiaries under the Davis-Stirling Act.** In further alternative, Plaintiffs are creditor-beneficiaries of the Policy. The HOA owed, and at all relevant times owes, Plaintiffs nondelegable statutory duties to repair, replace, and maintain the common areas (including the roof) under Civil Code section 4775, and to procure and maintain master policies of property and liability insurance for the benefit of the association and its members under Civil Code sections 5800 and 5805. The HOA's performance of its statutory obligations with respect to the Subject

Case No.: _____    -6-
COMPLAINT

Property is discharged in part by State Farm's performance of the Policy. Where the promisee owes a duty to a third party and the promisor's performance satisfies that duty, the third party is a creditor-beneficiary with standing to enforce the contract. (*COAC, Inc. v. Kennedy Engineers* (1977) 67 Cal.App.3d 916, 919–920; see also *Goonewardene, supra*, 6 Cal.5th at p. 830.)

## C. The Loss

17. On or about November 14, 2025, the HOA, acting through its managing agent Genie Real Estate & Property Management, exclusively engaged Howard & Sons, Inc. to perform roofing operations on the common-area roof covering Plaintiffs' condominium units.

18. Despite actual knowledge of forecasted rain and despite warnings by homeowners, Howard & Sons left multiple sections of the common-area roof exposed and inadequately protected, applying only an adhesive sealant that required approximately twenty-four (24) hours to cure. Howard & Sons then departed the jobsite before the sealant cured and before the rains arrived.

19. Heavy rain fell on or about November 14, 2025. The exposed roof failed. Massive quantities of rainwater entered each of Plaintiffs' condominium units, causing catastrophic damage to structural components, ceilings, drywall, flooring, cabinetry, electrical systems, plumbing, insulation, and personal property, and destroying or severely damaging Plaintiffs' household furnishings, appliances, electronics, clothing, and other personal belongings.

20. All five of Plaintiffs' units were red-tagged by building authorities, rendered completely uninhabitable, and subsequently gutted. The loss is a direct physical loss of or damage to Covered Property, within the Policy period, caused by a Covered Cause of Loss under the all-risks form. No exclusion applies to preclude coverage for the loss. To the extent State Farm invokes any exclusion — including any exclusion for "faulty workmanship," "wear and tear," "water damage," or similar concurrent or contributing causes — no such exclusion unambiguously bars coverage on the facts alleged, and any such exclusion must be construed narrowly and against State Farm. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822; *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648; *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 269–270.) Further, to the extent the loss involves concurrent causes,

coverage is determined by the efficient proximate cause — here, a covered peril of contractor-caused loss permitting ensuing rainwater intrusion. (*Garvey v. State Farm Fire & Cas. Co.* (1989) 48 Cal.3d 395, 403–407.)

21. Hammer Logic Construction & Remodeling ("HammerLogic"), a contractor retained to provide a repair estimate for the Subject Property and Plaintiffs' units, prepared an Xactimate replacement-cost estimate of, on information and belief, $298,494.58 for necessary repairs, which estimate has been in State Farm's possession for multiple months. The Xactimate estimate substantially understates Plaintiffs' total loss, which includes additional structural damage revealed after demolition, personal-property losses, and ongoing Additional Living Expense.

## D. Plaintiffs' Displacement

22. Plaintiffs were displaced from their homes on or about November 14, 2025 as a direct and foreseeable result of the water-intrusion loss. After initial emergency assistance from the American Red Cross was exhausted, Plaintiffs were temporarily housed, at the HOA's expense, at the Home2 Suites hotel facility in Montebello, California, where they have remained since in or about November 2025.

23. Throughout this entire period of displacement, State Farm has refused or failed to pay any Additional Living Expense or Loss of Income and Extra Expense benefits under the Policy, notwithstanding (i) the obvious and continuing displacement of the Plaintiffs, (ii) the Policy's twelve-month Actual-Loss-Sustained coverage, and (iii) the HOA's and Plaintiffs' repeated requests for payment.

## E. State Farm's Claim-Handling Conduct

24. Prompt notice of the November 14, 2025 loss was given to State Farm, and State Farm assigned claim number 75-93M7-55L (on information and belief). State Farm assigned adjuster **Briana Harrington** to handle the claim.

25. State Farm, through adjuster Harrington, initially inspected the Subject Property and communicated with Plaintiffs, the HOA, and the HOA's managing agent. State Farm then agreed to engage HammerLogic as the repair contractor. State Farm has, however, failed to fund

Case No.: _____                    -8-
COMPLAINT

HammerLogic or any other contractor, and has failed to pay or advance any undisputed portion of the claim.

26. More than five (5) months have now passed since tender of the loss. As of the filing of this Complaint, State Farm has **not** accepted or denied the claim, in whole or in part, in writing. State Farm has **not** provided a written statement of the factual or legal bases for any continued withholding of benefits as required by Title 10 of the California Code of Regulations, section 2695.7(b). State Farm has **not** paid any ALE. State Farm has **not** funded HammerLogic or authorized the commencement of repairs. State Farm has **not** requested any additional information that would remotely justify its continued inaction.

27. Adjuster Harrington has, for substantial periods, ceased returning telephone calls, emails, and written correspondence from Plaintiffs, the HOA, and Plaintiffs' counsel.

28. On or about February 12, 2026, Plaintiffs' counsel served a written demand on State Farm (among other parties) demanding written assurance that the claim would be handled in good faith and that Plaintiffs would not be removed from their temporary hotel accommodations until repairs were completed. State Farm failed to provide any such assurance.

29. On or about April 9, 2026, Plaintiffs' counsel served a written notice on State Farm particularizing State Farm's bad-faith claims-handling conduct and demanding good-faith adjustment and payment of the claim. State Farm failed to respond.

30. On or about April 3, 2026, written notice of State Farm's bad-faith claims-handling conduct was personally served upon State Farm's Chief Executive Officer, **Herbert Wensley**, at 1 State Farm Plaza, Bloomington, Illinois 61710. That notice described the conduct described in paragraphs 25–30 above in detail, demanded that State Farm cure the bad faith and adjust and pay the claim in accordance with law, and stated that this action would be filed on or about May 5, 2026 if the claim were not adjusted in good faith. State Farm, acting through Mr. Wensley and through other officers, directors, and managing agents, received and was on actual notice of the matters described in that written notice, and, as of the filing of this Complaint, elected not to cure. State Farm has thereby authorized, ratified, and adopted the claims-handling conduct described in paragraphs 25–30 above.

-9-

Case No.: 

COMPLAINT

31. Plaintiffs are informed and believe, and on that basis allege, that State Farm's continued refusal or failure to accept or deny the claim, to pay ALE, to fund repairs, and to communicate with Plaintiffs is neither an inadvertent oversight nor the product of any reasonable investigation or genuine dispute; rather, it reflects State Farm's adopted practice of delaying, underpaying, and stonewalling first-party property claims to pressure insureds into abandoning, compromising, or forgoing policy benefits to which they are entitled. To the extent State Farm now attempts to manufacture a "genuine dispute" as to coverage, causation, scope, or valuation, any such dispute is pretextual and is not founded on a basis that is reasonable under all the circumstances. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723–724.) State Farm's invocation of any actual or anticipated dispute between it and any other insurer (including the commercial general liability insurer of Howard & Sons, Inc., or any insurer for Genie Real Estate & Property Management) is not, and cannot be, a lawful ground for delaying or denying first-party benefits owed to State Farm's own insureds. To do so is to place State Farm's own interests, and the convenience of its subrogation disputes with other carriers, above the rights of the insureds — the very conduct the covenant of good faith forbids. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818–820.)

## F. Regulatory Standards as Evidence of Unreasonableness

32. The Fair Claims Settlement Practices Regulations, Title 10 of the California Code of Regulations, sections 2695.1 et seq., promulgated under Insurance Code section 790.03, establish minimum standards for claims handling by every admitted insurer in California. Those regulations require, among other things:

a. that an insurer acknowledge receipt of a claim within fifteen (15) calendar days and, unless it has paid the claim, commence any necessary investigation within fifteen (15) calendar days (10 CCR § 2695.5(e));

b. that an insurer accept or deny the claim, in whole or in part, in writing, immediately upon completing its investigation and in no event more than forty (40) calendar days after receipt of the proof of claim, and, where additional time is needed, advise the claimant in writing every

Case No.: _____

-10-

COMPLAINT

thirty (30) days of the status of the claim and the reasons additional time is needed (10 CCR § 2695.7(b)-(c));

c. that where a claim is denied in whole or in part, the insurer provide a written statement of the specific factual and legal bases for the denial and cite the specific policy provisions relied upon (10 CCR § 2695.7(b)(1));

d. that an insurer tender payment of any amounts not in dispute, even while it investigates disputed portions of the claim (10 CCR § 2695.7(h)); and

e. that no insurer shall engage in any unfair or deceptive act or practice in the business of insurance, including but not limited to failing to adopt and implement reasonable standards for the prompt investigation and processing of claims, failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered, and not attempting in good faith to effectuate a prompt, fair, and equitable settlement of a claim. (Ins. Code, § 790.03, subd. (h).)

33. State Farm's conduct as alleged herein violates each of the foregoing standards. Plaintiffs plead these regulatory standards solely as evidence of the unreasonableness of State Farm's conduct and as indicia of industry standards of good-faith claims handling, and not as the basis of any private statutory cause of action. (*Moradi-Shalal v. Fireman's Fund Ins. Cos.* (1988) 46 Cal.3d 287, 304–305; *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1077–1079.)

## G. Performance and Tolling

34. Plaintiffs, directly and/or through the HOA, have performed all conditions precedent under the Policy to the full extent required, or have been excused from performance, or such conditions have been waived or their performance has been rendered impossible or futile by the acts, omissions, or silence of State Farm. (Code Civ. Proc., § 457.)

35. Any contractual suit-limitation period under the Policy or under Insurance Code section 2071 has been equitably tolled from the date of notice of loss to the present, because State Farm has not yet denied the claim, and remains tolled until State Farm issues a formal written denial. (*Prudential-LMI Commercial Ins. v. Superior Court* (1990) 51 Cal.3d 674, 693.)

-11-

Case No.:

COMPLAINT

## H. Preservation Allegation — Elder Financial Abuse

36. Welfare and Institutions Code section 15610.27 defines an "elder" as any person residing in the State of California who is sixty-five (65) years of age or older.

37. Welfare and Institutions Code section 15610.30 provides that financial abuse of an elder occurs when a person or entity takes, secretes, appropriates, obtains, or retains real or personal property of an elder for a wrongful use or with intent to defraud, or both. "Wrongful use" is established, among other ways, where the defendant knew or should have known that its conduct was likely to be harmful to the elder. (Welf. & Inst. Code, § 15610.30, subd. (b).) Financial abuse includes deprivation of a property right accomplished through an agreement or representative, so that a defendant need not "take" directly from the elder to commit the abuse. (*Mahan v. Charles W. Chan Insurance Agency. Inc.* (2017) 14 Cal.App.5th 841, 855–862.)

38. Some of the Plaintiffs are sixty-five (65) years of age or older, and therefore are "elders" within the meaning of Welfare and Institutions Code section 15610.27.

39. As alleged throughout this Complaint, State Farm, through its agents, employees, and managing agents, has taken, secreted, appropriated, obtained, and retained real and personal property of the elder Plaintiffs — specifically, the benefits owed to them under the Policy for the November 14, 2025 water loss, including Additional Living Expense and replacement-cost repair benefits, together with interest thereon. and including the possessory and habitability interests of the elder Plaintiffs in their condominium units — for a wrongful use and with intent to defraud. State Farm knew, or reasonably should have known, that its conduct in delaying, underpaying, and otherwise withholding covered benefits for the November 14, 2025 loss was likely to be harmful to the elder Plaintiffs, who are particularly vulnerable by reason of age, reliance upon stable housing, and limited capacity to absorb uncompensated financial loss. (Welf. & Inst. Code, § 15610.30, subds. (a)–(c); see *Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 656–658; *Mahan, supra,* 14 Cal.App.5th at pp. 855–862.)

40. These allegations are pleaded for preservation purposes only, to confirm compliance with the four-year statute of limitations applicable to elder financial abuse claims (Welf. & Inst. Code, § 15657.7), to provide fair notice of a potential future claim under the Elder Abuse and

Case No.:                                                                                    -12-
COMPLAINT

Dependent Adult Civil Protection Act, and to satisfy the relation-back doctrine in the event leave to amend is later sought. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409; Code Civ. Proc., § 474.) Plaintiffs do not, at this time, assert a separate cause of action for financial elder abuse, and expressly reserve all rights to seek leave to amend to add such a cause of action upon further investigation and discovery.

## FIRST CAUSE OF ACTION

## BREACH OF INSURANCE CONTRACT

### (By all Plaintiffs Against State Farm and Does 1–50)

41. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. The Policy is a valid and enforceable contract of insurance. At all relevant times, Plaintiffs were insureds, additional insureds, and/or intended third-party beneficiaries of the Policy. The HOA paid all premiums when due.

43. The November 14, 2025 loss is a direct physical loss of or damage to Covered Property within the Policy period, caused by a Covered Cause of Loss under the all-risks form. No exclusion bars coverage. Any exclusion potentially invoked by State Farm does not unambiguously apply to preclude coverage on the facts alleged and must be construed narrowly and against State Farm. (*AIU Ins. Co.*, *supra*, 51 Cal.3d at pp. 821–822; *MacKinnon*, *supra*, 31 Cal.4th at p. 648; *Garvey*, *supra*, 48 Cal.3d at pp. 403–407.)

44. Plaintiffs performed, or were excused from performance of, all conditions precedent under the Policy. State Farm has materially breached the Policy, and continues to do so, including, without limitation, by:

a. failing to pay any Additional Living Expense / Loss of Income and Extra Expense benefits for Plaintiffs' ongoing displacement from their units since November 14, 2025;

b. failing to pay the undisputed cost of repair;

c. failing to fund the repair contractor (HammerLogic) that State Farm agreed to engage;

d. failing to accept or deny the claim, in whole or in part, in writing;

Case No.:                                        -13-
                                            COMPLAINT

e. failing to provide any written statement of the factual or legal bases for its continued withholding of benefits; and

f. otherwise failing to perform its obligations under the Policy, including the obligations to investigate the claim promptly and thoroughly and to communicate with its insureds.

45. As a direct and proximate result of State Farm's breaches, Plaintiffs have been damaged in an amount to be proven at trial, but in no event less than the full Policy benefits, including (i) repair or replacement costs for the Subject Property and the interiors of Plaintiffs' units (including but not limited to the amounts reflected in the HammerLogic Xactimate estimate); (ii) all Additional Living Expense / Loss of Income and Extra Expense benefits for the entire period of displacement, up to the Policy's twelve-month Actual-Loss-Sustained limit; and (iii) personal-property and contents benefits as applicable.

46. Plaintiffs are further entitled to recover prejudgment interest on these damages pursuant to Civil Code section 3287, subdivision (a) (as to amounts certain or capable of being made certain by calculation) and, in the alternative, subdivision (b) (as to unliquidated contract damages, in the Court's discretion).

## SECOND CAUSE OF ACTION

## TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (INSURANCE BAD FAITH)

### (By all Plaintiffs Against State Farm and Does 1–50)

47. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48. Every insurance contract in the State of California contains an implied covenant of good faith and fair dealing that obligates the insurer to refrain from any conduct that would injure the right of its insured to receive the benefits of the agreement. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573–575; *Sarchett v. Blue Shield of Cal.* (1987) 43 Cal.3d 1, 15.) The breach of this covenant by an insurer gives rise to tort liability, independent of and in addition to contractual liability. (*Ibid.*)

Case No.: _____ -14-
COMPLAINT

49. The implied covenant imposes upon State Farm, among others, the following specific duties:

a. the duty to promptly and thoroughly investigate the claim (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818–820);

b. the duty to give the interests of its insureds at least equal consideration with its own (*Ibid.*);

c. the duty to accept or deny the claim, in whole or in part, in writing, within a reasonable time, and to state the factual and legal bases for any denial;

d. the duty to pay the undisputed portion of a claim promptly, even while investigating any disputed portion (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1077–1079);

e. the duty to communicate timely and candidly with the insured during the pendency of the claim;

f. the duty to refrain from using pretextual or manufactured "disputes" to justify inaction or delay (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723–724; *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 346–349);

g. the duty to refrain from subordinating the interests of its own insureds to its extrinsic disputes with other carriers or third parties; and

h. the duty to comply with the claims-handling standards established by Insurance Code section 790.03 and the Fair Claims Settlement Practices Regulations (10 CCR §§ 2695.1 et seq.), compliance or noncompliance with which is admissible as evidence of the reasonableness of the insurer's conduct (*Jordan, supra,* 148 Cal.App.4th at p. 1078).

50. State Farm breached, and continues to breach, each and all of the foregoing duties, and thereby withheld benefits due under the Policy unreasonably and without proper cause. Specifically, and without limitation:

a. more than five months after tender of the November 14, 2025 water loss, State Farm has still neither accepted nor denied the claim, in whole or in part, in writing, and has provided no written statement of factual or legal bases as required by 10 CCR section 2695.7(b);

b. State Farm has paid no Additional Living Expense or Loss of Income and Extra Expense benefits at any time, notwithstanding Plaintiffs' obvious and continuing displacement and the Policy's twelve-month Actual-Loss-Sustained coverage;

c. State Farm has not funded the repair contractor (HammerLogic) that State Farm agreed to engage, despite the HammerLogic Xactimate estimate (on information and belief, $298,494.58) being in State Farm's hands;

d. State Farm's adjuster, Briana Harrington, has for substantial periods ceased returning telephone calls, emails, and written correspondence from Plaintiffs, the HOA, and Plaintiffs' counsel, including Plaintiffs' April 9, 2026 written bad-faith notice and the February 12, 2026 pre-litigation demand;

e. State Farm has conducted no further investigation of the claim after the initial inspection and has identified no additional information it requires that would justify continued inaction;

f. on April 3, 2026, written notice of State Farm's bad-faith conduct and of Plaintiffs' intent to file suit was personally served upon State Farm's Chief Executive Officer, Herbert Wensley, at 1 State Farm Plaza, Bloomington, Illinois. State Farm, acting through Mr. Wensley and through its officers, directors, and managing agents, elected not to cure; and

g. any "dispute" State Farm has raised or may hereafter raise concerning coverage, causation, scope, or valuation is pretextual and is not founded on a basis that is reasonable under all the circumstances, within the meaning of *Wilson* and *Chateau Chamberay*. Any alleged dispute between State Farm and any other insurer (including the commercial general liability insurer for Howard & Sons, Inc., or any insurer for Genie Real Estate & Property Management) is not a lawful basis for delaying or denying benefits owed to State Farm's own insureds.

51. State Farm's conduct was and is unreasonable and without proper cause, and reflects a conscious disregard of Plaintiffs' rights as insureds. (*Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 214–215.)

Case No.:                                                                -16-
                                                                    COMPLAINT

52. As a direct and proximate result of State Farm's breach of the implied covenant, Plaintiffs have suffered, and will continue to suffer, the following damages, all in amounts to be proven at trial:

a. all Policy benefits wrongfully withheld, together with prejudgment interest thereon under Civil Code section 3287;

b. consequential economic damages, including but not limited to out-of-pocket hotel, lodging, storage, moving, and temporary-housing expenses that Plaintiffs have advanced or may be compelled to advance, additional living costs incurred by reason of displacement, diminished property value, and any increased construction and materials costs attributable to State Farm's delay — all recoverable even if such damages exceed Policy limits (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 433–434; *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 460–463);

c. severe mental and emotional distress, humiliation, anxiety, worry, and loss of enjoyment of life, recoverable as bad-faith damages without the need for a separate cause of action for intentional infliction of emotional distress and without proof of "extreme and outrageous" conduct (*Gruenberg, supra*, 9 Cal.3d at p. 580; *Crisci, supra*, 66 Cal.2d at pp. 433–434); and

d. attorneys' fees reasonably incurred to compel payment of Policy benefits, recoverable as compensatory damages pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817. The amount of such *Brandt* fees is to be determined by the trier of fact — the jury — absent stipulation of the parties. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 811–813.) *Brandt* fees form part of the compensatory-damages base for the calculation of any constitutional ratio on a punitive-damages award. (*Nickerson v. Stonebridge Life Ins. Co.* (2016) 63 Cal.4th 363, 373–377.)

## Punitive Damages Allegations

53. The conduct of State Farm as alleged herein was and is malicious, oppressive, and fraudulent within the meaning of Civil Code section 3294, subdivision (a), and was and is

Case No.:                                       -17-
                                          COMPLAINT

committed by, or authorized or ratified by, officers, directors, and managing agents of State Farm within the meaning of Civil Code section 3294, subdivision (b).

54. State Farm acted with **malice** in that it engaged in despicable conduct carried on with a willful and conscious disregard of the rights of its insureds, including by: (a) silencing its adjuster and refusing to communicate with Plaintiffs, the HOA, and Plaintiffs' counsel; (b) refusing to comply with the Fair Claims Settlement Practices Regulations, 10 CCR sections 2695.4, 2695.5, and 2695.7; (c) leaving five families — including elder Plaintiffs — to carry for more than five months the entire financial and emotional burden of a catastrophic water loss for which State Farm is contractually obligated to provide coverage; (d) refusing to pay any Additional Living Expense despite the Policy's express twelve-month Actual-Loss-Sustained coverage and despite obvious and continuing displacement; (e) refusing to fund the repair contractor it had itself agreed to engage; and (f) electing, through its Chief Executive Officer and other officers, directors, and managing agents, to do nothing after receiving written notice of the bad-faith conduct on April 3, 2026.

55. State Farm acted with **oppression** in that it subjected the five Plaintiffs — including elder Plaintiffs — to cruel and unjust hardship in conscious disregard of their rights, by leaving them displaced from their homes in a hotel for five or more months, refusing to advance Additional Living Expense benefits, refusing to fund the repair contractor, and refusing to issue a written coverage determination so that Plaintiffs could either return home or pursue other remedies.

56. State Farm acted with **fraud** in that, having issued the Policy, collected premiums, and initially represented to Plaintiffs and the HOA that coverage was available and that HammerLogic would be engaged to repair the damage, State Farm thereafter — without ever denying the claim in writing and without any lawful justification — withheld Policy benefits, concealed its intent to do so, and induced Plaintiffs and the HOA to continue to rely upon State Farm's representations and cooperation while causing Plaintiffs to incur extensive and wholly uncompensated out-of-pocket expenses.

Case No.:                                                      -18-
                                                          COMPLAINT

57. The foregoing conduct was and is committed by a managing agent of State Farm. Adjuster **Briana Harrington**, the claims professional assigned to handle Plaintiffs' claim, is and at all relevant times was a managing agent of State Farm within the meaning of Civil Code section 3294, subdivision (b), in that she exercised substantial discretionary authority over decisions affecting State Farm's corporate policy regarding the handling, acceptance, denial, and payment of first-party property claims, including the present claim, with little or no effective supervision. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822–823; *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 576–577.)

58. In addition and in the alternative, the foregoing conduct was authorized and ratified by State Farm's officers, directors, and managing agents, including Chief Executive Officer Herbert Wensley. On April 3, 2026, written notice was personally served upon Mr. Wensley at 1 State Farm Plaza, Bloomington, Illinois, describing in detail the conduct set forth in paragraphs 25 through 32 and 51 above, demanding that State Farm cure the bad-faith claims handling, and stating that this action would be filed if State Farm failed to do so within the stated cure period. State Farm, through Mr. Wensley and through other officers, directors, and managing agents, had and continues to have actual knowledge of the conduct described, and has elected, consciously and deliberately, not to cure. State Farm has thereby authorized and ratified the wrongful conduct of adjuster Harrington and of other claims personnel involved in the handling of the claim. (Civ. Code, § 3294, subd. (b); *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725–726; *Hart v. National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1428.)

59. The conduct described above constitutes clear and convincing evidence of malice, oppression, and fraud by officers, directors, and managing agents of State Farm, and is despicable conduct within the meaning of *College Hospital, supra*, 8 Cal.4th at page 725. Plaintiffs are accordingly entitled to an award of punitive and exemplary damages in an amount sufficient to punish State Farm and to deter State Farm and others similarly situated from engaging in like conduct in the future. Such punitive damages are not capped by the Policy limits and are not capped by the Policy at all. (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922 & fn. 5; *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 462–463.)

-19-

## THIRD CAUSE OF ACTION

## DECLARATORY RELIEF (Code Civ. Proc., § 1060)

## (By all Plaintiffs Against State Farm and Does 1–50)

60. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61. An actual and justiciable controversy has arisen and now exists between Plaintiffs and State Farm concerning the parties' respective rights and duties under the Policy. Plaintiffs contend, and State Farm denies or fails to acknowledge, among other things, that:

a. the Policy provides coverage for the November 14, 2025 water loss;

b. each Plaintiff is an insured, additional insured, or intended third-party beneficiary of the Policy and is entitled to benefits thereunder, including but not limited to Additional Living Expense / Loss of Income and Extra Expense and structural / contents repair or replacement benefits;

c. State Farm owes an ongoing, continuing duty to pay Additional Living Expense until each Plaintiff's unit is made habitable or until the applicable twelve-month Actual-Loss-Sustained limit is exhausted, whichever first occurs;

d. State Farm is required to comply with the Fair Claims Settlement Practices Regulations, 10 CCR sections 2695.4, 2695.5, and 2695.7, in the handling of Plaintiffs' claim, including the obligation to accept or deny the claim in writing and to issue a written statement of factual and legal bases for any denial;

e. any exclusion potentially invoked by State Farm (including but not limited to any "faulty workmanship," "wear and tear," or "water damage" exclusion) does not unambiguously preclude coverage for the November 14, 2025 loss on the facts alleged; and

f. State Farm's silence, delay, or failure to accept or deny the claim does not waive, reduce, or otherwise limit any of its obligations under the Policy, under California statutory law, or under the regulations cited above.

62. A judicial determination of the parties' respective rights and duties is necessary and appropriate at this time in order that Plaintiffs may ascertain and secure those rights, and in order

Case No.: _____    -20-
COMPLAINT

to avoid further harm from State Farm's ongoing pattern of delay and inaction. Declaratory relief is the paradigmatic mechanism for resolving insurance-coverage disputes. (*Montrose Chem. Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299–300; *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 973.)

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE UNFAIR COMPETITION LAW (Bus. & Prof. Code, § 17200 et seq.)

## (By all Plaintiffs Against State Farm and Does 1–50)

63. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64. Business and Professions Code section 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. State Farm's acts and practices as alleged herein violate each of the three prongs.

65. **Unlawful prong.** The acts and practices alleged violate California law independent of Insurance Code section 790.03, including, without limitation, the common-law implied covenant of good faith and fair dealing owed by State Farm to its insureds and third-party beneficiaries, the law of contracts, and the protections of the Davis-Stirling Common Interest Development Act (Civ. Code, §§ 4775, 5800, 5805). Plaintiffs do not base their UCL claim on Insurance Code section 790.03 standing alone; State Farm's violations of section 790.03 and the Fair Claims Settlement Practices Regulations are pleaded only as additional evidence of unfairness. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 378–384; *State Farm Fire & Cas. Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1104.)

66. **Unfair prong.** State Farm's acts and practices are unfair in that they offend established public policy, cause substantial injury to consumers that consumers cannot reasonably avoid, and are not outweighed by countervailing benefits to consumers or competition. The public policy favoring prompt, fair, and equitable settlement of first-party property claims is reflected in Insurance Code section 790.03, the Fair Claims Settlement Practices Regulations, and California common law.

-21-

Case No.: _____                    COMPLAINT

67. **Fraudulent prong.** State Farm's course of conduct as alleged — including issuing the Policy, collecting premiums, making initial representations of coverage and adjustment, engaging a repair contractor, and then withholding benefits without ever accepting or denying the claim — is likely to deceive members of the public, and in fact has deceived Plaintiffs and the HOA.

68. As a direct and proximate result of State Farm's acts and practices, Plaintiffs have suffered injury in fact and have lost money or property, including (a) Policy benefits that State Farm has wrongfully withheld, (b) out-of-pocket hotel, lodging, storage, moving, and other additional-living-expense advances that Plaintiffs have incurred or will incur, and (c) diminution in the value of their Policy coverage relative to the premiums paid. Plaintiffs accordingly have standing under Business and Professions Code section 17204 and Proposition 64. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322–327; *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788–789.)

69. Plaintiffs seek, on behalf of themselves only and not as a class representative: (a) **restitution** of all sums wrongfully withheld by State Farm and of all out-of-pocket advances incurred by Plaintiffs, in amounts to be determined at trial; and (b) a **permanent injunction** (i) compelling State Farm to timely and fully adjust and pay the claim in accordance with the Policy and applicable law, (ii) compelling State Farm to continue to pay Additional Living Expense during the entire period of displacement up to the Policy's applicable limit, and (iii) enjoining State Farm from denying the claim without a written statement of factual and legal bases as required by 10 CCR section 2695.7(b)(1). The UCL permits the award of restitution and injunctive relief but not damages, attorneys' fees, or punitive damages. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.)

70. This cause of action is timely under Business and Professions Code section 17208 (four-year statute of limitations).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants STATE FARM GENERAL INSURANCE COMPANY and DOES 1 through 50, inclusive, as follows:

Case No.: _____     -22-
COMPLAINT

**On the First Cause of Action (Breach of Contract):**

1. For general and consequential compensatory damages according to proof, including all Policy benefits wrongfully withheld (including, without limitation, Additional Living Expense / Loss of Income and Extra Expense benefits for the full period of displacement up to the twelve-month Actual-Loss-Sustained limit, and repair/replacement/contents benefits);

2. For prejudgment interest pursuant to Civil Code section 3287, subdivisions (a) and/or (b);

**On the Second Cause of Action (Tortious Breach of Implied Covenant / Insurance Bad Faith):**

3. For all compensatory damages, including (a) all Policy benefits wrongfully withheld; (b) consequential economic damages, including but not limited to out-of-pocket hotel, lodging, storage, moving, and temporary-housing expenses, diminution in property value; and increased construction and materials costs attributable to State Farm's delay; (c) emotional-distress damages; and (d) attorneys' fees reasonably incurred to compel payment of Policy benefits as compensatory damages under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 and *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, the amount to be determined by the jury;

4. For punitive and exemplary damages pursuant to Civil Code section 3294, not limited to or capped by the Policy limits, in an amount sufficient to punish State Farm and to deter similar conduct;

5. For prejudgment interest pursuant to Civil Code section 3287;

**On the Third Cause of Action (Declaratory Relief):**

6. For a judicial declaration of the rights and duties of the parties under the Policy, including declarations consistent with paragraph 62 above and declarations that State Farm has and continues to have a duty to pay Additional Living Expense / Loss of Income and Extra Expense benefits until each Plaintiff's unit is restored to habitable condition or until the applicable Policy limit is exhausted, whichever first occurs, and that State Farm has a continuing duty to comply with Title 10 of the California Code of Regulations, sections 2695.4, 2695.5, and 2695.7;

Case No.: _____

-23-

COMPLAINT

**On the Fourth Cause of Action (Unfair Competition):**

7. For restitution of all sums wrongfully withheld by State Farm and of all out-of-pocket advances incurred by Plaintiffs;

8. For a permanent injunction (a) compelling State Farm to timely and fully adjust and pay the claim in accordance with the Policy and applicable law; (b) compelling State Farm to continue to pay Additional Living Expense benefits during the entire period of displacement up to the Policy's applicable limit; and (c) enjoining State Farm from denying the claim without the written statement of factual and legal bases required by 10 CCR section 2695.7(b)(1);

**On All Causes of Action:**

9. For costs of suit incurred herein (Code Civ. Proc., §§ 1032, 1033.5);

10. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: 4-25-2026                    LAW OFFICES OF NOLAN F. KING

By: _____
NOLAN F. KING, ESQ.
Attorney for Plaintiffs

Case No.:                                      -24-
                                         COMPLAINT

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

## NOTICE OF CASE ASSIGNMENT

## UNLIMITED CIVIL CASE

Your case is assigned for all purposes to the judicial officer indicated below.

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

**04/27/2026**

David W. Slayton, Executive Officer / Clerk of Court

By. _____ P. Rodríguez _____ Deputy

CASE NUMBER:
26STCV13524

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Alison  Mackenzie | 55 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

By P. Rodriguez _____ , Deputy Clerk

on 04/28/2026
(Date)

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

LACIV 190 (Rev 6/18)
LASC Approved 05/06

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

## APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

## COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

## CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

## STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

## SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.

## Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

## *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

## NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE



### Superior Court of California, County of Los Angeles
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

## WHAT IS ADR?
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

## TYPES OF ADR

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

## ADVANTAGES OF ADR

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

## DISADVANTAGES OF ADR

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

## WEBSITE RESOURCES FOR ADR

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 12/25
For Mandatory Use

Page 1 of 3

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**

Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

## Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)

Litigants should closely review the requirements for each program and the types of cases served.

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | **FILED** Superior Court of California County of Los Angeles 04/28/2026 David W. Slayton, Executive Officer / Clerk of Court By. ___ N. Quintanilla ___ Deputy |
| PLAINTIFF: Edith Gonzalez , et al. | |
| DEFENDANT: State Farm General Insurance Company | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 26STCV13524 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

> Date: 09/03/2026    Time: 8:30 AM    Dept. 55

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 04/28/2026

_____
Judicial Officer
Alison Mackenzie / Judge

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in Los Angeles ___, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

David W. Slayton, Executive Officer / Clerk of Court

Dated: 04/28/2026

By _____
Deputy Clerk

LASC LACIV 132 Rev. 01/23
For Optional Use

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

Cal Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF(S)/PETITIONER(S):

Edith Gonzalez , et al.

DEFENDANT(S)/RESPONDENT(S):

State Farm General Insurance Company

| | |
|---|---|
| **CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE** | CASE NUMBER:<br>26STCV13524 |

**FOR COURT USE ONLY**

**FILED**
Superior Court of California
County of Los Angeles

04/28/2026

David W. Slayton, Executive Officer / Clerk of Court

By: _____ N. Quintanilla _____ Deputy

I, David W. Slayton, Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein and that on this date I served the

## Notice of Case Management Conference of 04/28/2026

upon each party or counsel of record in the above entitled action by electronically serving to the party or parties at the electronic address as listed below:

**"King, Nolan F." <nfkinglaw@gmail.com>**

The electronic transmission originated from the Superior Court of California, County of Los Angeles email address eService-DoNotReply@lacourt.org at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012.

Dated: 04/28/2026

David W. Slayton, Executive Officer / Clerk of Court

By: _N. Quintanilla_____
Deputy Clerk

**Page 1 of 1**

CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE

LASC CIV 310 NEW 03/25
For Mandatory Use

Code of Civil Procedure § 1013b(4)